**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Patrick T. Buckner,                                       )<br>                                                                      )<br>            Defendant-Movant,              )<br>                                                                      )<br>vs.                                                                 )<br>                                                                      )<br>United States of America,                       )<br>                                                                      )<br>            Plaintiff-Respondent.              )<br>                                                                      )<br>_____) | No. CV 10-01799-PHX-FJM<br>       CR 01-01104-01-PHX-FJM<br><br>**ORDER** |

We have before us defendant's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (doc. 1), defendant's memorandum in support (doc. 2), respondent's response (doc. 16), respondent's notice of supplemental authority (doc. 19), defendant's reply (doc. 22), the Report and Recommendation of the United States Magistrate Judge ("R&R") recommending denial of defendant's motion (doc. 23), the government's objections (doc. 24), and defendant's objections (doc. 31).

Defendant was convicted on April 20, 2004 of conspiracy, wire fraud, mail fraud, interstate transportation of stolen property, and money laundering. He now asserts that his convictions for conspiracy and wire fraud are contrary to Skilling v. United States, 130 S. Ct. 2896 (2010) and that he was denied the effective assistance of counsel.

**I**

"A § 2255 movant procedurally defaults his claims by not raising them on direct appeal and not showing cause and prejudice or actual innocence in response to the default."

1  United States v. Ratigan, 351 F.3d 957, 962 (9th Cir. 2003).  "[T]o obtain collateral relief
2  based on trial errors to which no contemporaneous objection was made, a convicted
3  defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual
4  prejudice' resulting from the errors of which he complains."  United States v. Frady, 456 U.S.
5  152, 167-68, 102 S. Ct. 1584, 1594 (1982).  "Cause" requires a showing of "some objective
6  factor" which impeded compliance with a procedural rule, such as "a showing that the factual
7  or legal basis for a claim was not reasonably available to counsel."  Murray v. Carrier, 477
8  U.S. 478, 488, 106 S. Ct. 2639, 2645 (1986).  Prejudice requires "showing, not merely that
9  the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and
10 substantial disadvantage, infecting his entire trial with error of constitutional dimensions."
11 Frady, 456 U.S. at 170, 102 S. Ct. at 1596.  There is a narrow exception to the cause and
12 prejudice requirement "where a constitutional violation has probably resulted in the
13 conviction of one who is actually innocent."  Murray, 477 U.S. at 496, 106 S. Ct. at 2649.
14 Actual innocence is established if a petitioner demonstrates that it is more likely than not that
15 no reasonable juror would have convicted him, or he was convicted for conduct not
16 prohibited by law.  Alaimalo v. United States, 645 F.3d 1042, 1047 (9th Cir. 2011).

**II**

18  Defendant's first claim is that his conviction is contrary to Skilling v. United States,
19 130 S. Ct. 2896 (2010).  In Skilling, the United States Supreme Court narrowed the meaning
20 of honest services fraud under 18 U.S.C. § 1346 to encompass only bribery or kickback
21 schemes.  Id. at 2930-31.  Respondent contends that defendant procedurally defaulted his
22 convictions for honest services fraud because he did not raise a legal challenge similar to that
23 raised in Skilling.  Even assuming defendant has shown cause for failing to raise a legal
24 claim similar to that of Skilling during his trial or on direct appeal, he has not shown
25 prejudice or actual innocence.  The conduct underlying his conviction, taking kickbacks, is
26 still a valid theory of honest services fraud after Skilling.  See Skilling, 130 S. Ct. at 2931 ("§
27 1346 criminalizes *only* the bribe-and-kickback core of the pre-McNally case law.").  As a
28 result, he is not entitled to relief on the merits of a Skilling claim.

1    Defendant contends that the jury could have convicted him based on an interpretation
2    of § 1346 which violates the holding of Skilling. The harmless error standard applies when
3    a jury may have convicted on a legally invalid theory and a defendant challenges jury
4    instructions in a § 2255 action. Skilling, 130 S. Ct. at 2934; United States v. Montalvo, 331
5    F.3d 1052, 1058 (9th Cir. 2003). An error is harmless unless it "had substantial and injurious
6    effect or influence in determining the jury's verdict." Hedgpeth v. Pulido, 555 U.S. 57, 58,
7    129 S. Ct. 530, 531 (2008) (quoting Brecht v. Abrahamson, 507 U.S. 619, 623, 113 S. Ct.
8    1710, 1714 (1993)).

9    As the magistrate judge noted, "the government established Movant's guilt by
10   participation in a bribery kickback scheme involving money and property, a theory of guilt
11   clearly preserved in Skilling." Report and Recommendation at 19. The jury was instructed
12   on a valid theory of guilt and sufficient evidence was presented to sustain a conviction. We
13   conclude that the challenged instruction was harmless.

## III

15   Defendant alleges that he was denied the effective assistance of counsel at his trial.
16   To be entitled to relief on this ground, defendant must show that his counsel's performance
17   was deficient and that this deficiency prejudiced his defense. Strickland v. Washington, 466
18   U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). Deficiency is established by showing that
19   "counsel's representation fell below an objective standard of reasonableness. . . . under
20   prevailing professional norms." Id. at 688, 104 S. Ct. at 2064-65. To establish prejudice, a
21   "defendant must show that there is a reasonable probability that, but for counsel's
22   unprofessional errors, the result of the proceeding would have been different." Id. at 694,
23   104 S. Ct. at 2068. "Review of counsel's performance is highly deferential and there is a
24   strong presumption that counsel's conduct fell within the wide range of reasonable
25   representation." United States v. Ferreira-Alameda, 815 F.2d 1251, 1253 (9th Cir. 1986).
26   The basis for this claim is counsel's alleged failure to review all documents underlying

1  the Burnison Report before trial.[1]  Defendant pursued this theory in his motion for new trial
2  and his direct appeal.  "Issues disposed of on a previous direct appeal are not reviewable in
3  a subsequent § 2255 proceeding."  United States v. Currie, 589 F.2d 993, 995 (9th Cir. 1979).
4  Defendant also claims that counsel failed to effectively cross-examine the report's
5  author, Mr. Burnison.  At an evidentiary hearing on his motion for new trial, defense witness
6  David Hagstrom (a Boeing employee previously supervised by defendant) testified that there
7  were legitimate reasons why the zero line items went out at no charge. Defendant argued that
8  Hagstrom's investigation of the report undermined its credibility and his counsel was
9  deficient by not going through the Burnison report and supporting documentation before trial.
10 However, defendant fails to establish that any prejudice resulted from his counsel's actions.
11 The trial court concluded that the documents, "with possibly three minor exceptions in more
12 than a hundred instances, fully supported the Burnison Report."  (Doc. 17, tab 5 at 112).
13 Defendant is not entitled to relief on this claim.

## IV

**IT IS THEREFORE ORDERED** accepting the recommendation of the magistrate judge (doc. 23) and **DENYING** the motion for relief pursuant to 28 U.S.C. § 2255 (doc. 1).

DATED this 14th day of March, 2012.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge

---

[1] Boeing employee Mark Burnison prepared a report for the government's use at trial which showed sales orders with zero line items (items included in the order without a price). By comparing this data with the price at which the items should have been billed, Mr. Burnison suggested that two Boeing Service Centers received free product totaling over $1 million.